IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 12-418-6 |
| v. | : | |
| | : | CIVIL ACTION |
| KENNETH PARNELL | : | No. 16-6214 |

## MEMORANDUM

Juan R. Sánchez, C.J.                                                                                 August 14, 2020

      Defendant Kenneth Parnell collaterally attacks his convictions for conspiring and attempting to rob a fake stash house. He argues his counsel was ineffective because he: (1) did not object to Parnell being indicted for multiple conspiracies; (2) did not object to Parnell being indicted for both conspiracy and attempt; (3) did not timely seek discovery regarding Parnell's selective enforcement claim; and (4) did not object to four errors during trial. Parnell also argues his conviction for carrying a firearm during a drug crime or crime of violence should be overturned because recent Supreme Court cases held the definition of a crime of violence is unconstitutionally vague. The Court will deny Parnell's motion to vacate, set aside, or correct his sentence without a hearing because the record shows that his attorney was not ineffective, and his conviction is not implicated by the recent Supreme Court precedent.

**BACKGROUND**

      Parnell and his seven codefendants[1] were caught in a Bureau of Alcohol Tobacco and Firearms sting involving a fake stash house. During the sting, an undercover ATF agent posed as someone who knew of a stash house with ten kilograms of cocaine. A confidential informant put the agent in touch with one of Parnell's codefendants, Robert Lamar Whitfield. Whitfield and the

---

[1] Parnell's codefendants are Robert Lamar Whitfield, Najee Murray, Marlon Graham, Lafayette Rawls, Jamie Dales, Kareem Long, and Frank Thompson.

agent then organized a robbery of the stash house. On the day of the robbery, July 18, 2012, Parnell and the other codefendants arrived to assist. The agent and the Defendants met in a hotel parking lot to plan the robbery. Then, they drove to a junkyard to ostensibly pick up a car the agent had brought for the robbery. At the junk yard, the Defendants began preparing for the robbery by taking out their guns and putting on gloves. The agent then called in backup and all the Defendants were arrested. On August 9, 2012, all eight Defendants were indicted. While three of Parnell's codefendants pleaded guilty, Parnell and the other four codefendants went to trial.

During the trial, the jury heard testimony from the undercover ATF agent who had participated in the sting. The agent walked the jury through his interactions with the Defendants. He answered questions about audio and video recordings of his meetings with Whitfield and his discussions with the Defendants on the day of the fake robbery. The agent also gave the jury some background information about how he investigated the Defendants. This information included how he decided what story to tell the Defendants, how he worked with the confidential informant, how he decided where and when to meet the Defendants, and how he recorded his conversations with the Defendants.

The jury also heard testimony from Detective Christopher Marano, an expert on drug trafficking. Detective Marano testified about how cocaine moves in interstate commerce, the various ways to sell cocaine, and the amount of cocaine that is typically sold. During his testimony, he opined that the only way to make money from drugs is to sell them. He also opined that no one could possess even close to ten kilograms of cocaine for personal use because using such a large amount of cocaine would be fatal.

Parnell also testified on his own behalf at trial. He testified that he drove Kareem Long, one of his codefendants, to the meeting at the hotel parking lot and to the junkyard. He explained

that he drove Long's car because Long was not familiar with the area. According to Parnell, he did not know anything about the stash house robbery before he arrived at the hotel, and he had no connection to many of his codefendants. Parnell also told the jury that, after he heard the robbery plan, he thought it did not make sense. He said he tried to use Long's car to leave the junkyard, but he was arrested before he could do so. During the government's closing argument and its rebuttal to the Defendants' closing arguments, it challenged Parnell's version of events. It pointed out that Parnell knew at least two of his codefendants, Long and Lafayette Rawls. It also pointed out that Long had asked the undercover agent if he could park his car in the junkyard while they committed the robbery, which implied that Long and Parnell did not intend to use the car to leave the junkyard.

On May 22, 2013, the jury convicted Parnell of five charges: conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, conspiracy to sell drugs, attempt to sell drugs, and carrying a firearm during a drug crime or crime of violence. According to the jury's answers to special interrogatories on the verdict slip, Parnell's conviction for carrying a firearm during a drug crime or crime of violence was premised on all four of Parnell's other convictions. After his conviction, Parnell and his codefendants sought discovery on whether they were victims of selective enforcement. They argued they were targeted in the stash house sting because they were all black. The Court denied the motion because it was untimely and because the Defendants did not meet the threshold showing for discovery on this claim. The Court then sentenced Parnell to 16 years in prison.

On October 3, 2014, Parnell appealed his conviction and sentence. The Third Circuit denied his appeal. *See United States v. Parnell*, 652 F. App'x 117 (3d Cir. 2016).₂ Parnell now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He raises five arguments.₃ In his first four arguments, Parnell claims his counsel was ineffective for failing to raise certain issues while his case was being litigated. In his final argument, Parnell claims the Supreme Court's recent decisions undermine his conviction for carrying a firearm during a drug crime or crime of violence.

**DISCUSSION**

---

₂ The four other defendants who went to trial with Parnell also appealed. Their appeals were likewise denied. *See United States v. Whitfield*, 649 F. App'x 192 (3d Cir. 2016); *United States v. Graham*, 639 F. App'x 152 (3d Cir. 2016); *United States v. Long*, 649 F. App'x 200 (3d Cir. 2016); *United States v. Thompson*, 639 F. App'x 154 (3d Cir. 2016).

₃ Parnell has filed several briefs and amendments relating to his § 2255 motion. This memorandum opinion disposes of all arguments Parnell has raised in any of these documents. However, the Court will not address Parnell's argument that robbing drug dealers does not violate the Hobbs Act. This argument is procedurally defaulted because Parnell could have raised it in his direct appeal but chose not to do so. *See Massaro v. United States*, 538 U.S. 500, 504, (2003) ("[The] general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."); *United States v. Travillion*, 759 F.3d 281, 288 n. 11 (3d Cir. 2014) ("[I]ssues which should have been raised on direct appeal may not be raised with a § 2255 motion.").

Even if Parnell's argument was not procedurally defaulted, it is foreclosed by Third Circuit precedent. The Third Circuit has explained that "the reach of the Hobbs Act is 'coextensive with that of the Commerce Clause of the United States Constitution.'" *United States v. Walker*, 657 F.3d 160, 179 (3d Cir. 2011) (internal citations omitted). Therefore, a defendant violates the Hobbs Act when he commits "a robbery [which] target[s] a drug dealer whose wares originated out of state." *Id.* at 181. Parnell urges the Court to ignore this precedent. He argues Congress passed the Hobbs Act to prevent robberies of truck drivers traveling on interstate highways. The specific purpose of the Act is not relevant here, however, because the plain text of the statute is broad enough to encompass robberies of drug dealers. *Cf. Pellegrino v. United States of Am. Transportation Sec. Admin., Div. of Dep't of Homeland Sec.*, 937 F.3d 164, 179 n. 4 (3d Cir. 2019) (explaining how the broad language of the Racketeer Influenced and Corrupt Organization Act (RICO) has been used to prohibit behavior outside of the behavior originally contemplated by Congress); *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1737 (2020) (holding that LGBT people are protected under the Civil Rights Act, even though "[t]hose who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result").

4

The Court finds none of Parnell's arguments persuasive and will deny his motion without a hearing. Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move to have his sentence vacated, set aside, or corrected if the sentence was imposed in violation of a law or constitutional right such as the right to effective assistance of counsel. In evaluating a § 2255 motion, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015). When a § 2255 motion is filed, a district court must "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

I. **Ineffective Assistance of Counsel**

Parnell's counsel was not ineffective. To prove that his counsel was ineffective, Parnell must show: (1) his counsel was deficient and (2) he was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is deficient when his "representation fell below an objective standard of reasonableness." *Id.* at 688. When deciding whether counsel falls below this standard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even when counsel was deficient, a defendant must still show he was prejudiced to succeed on an ineffectiveness claim. A defendant is prejudiced by counsel's behavior when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

None of Parnell's ineffectiveness claims meet this two-pronged standard. Two of the four errors Parnell identifies do not meet the deficiency prong: counsel's failure to object on double jeopardy grounds to the two conspiracy charges and the simultaneous conspiracy and attempt

5

charges. Parnell's third alleged error, counsel's failure to timely request discovery on his selective enforcement claim, does not meet the prejudice prong. Parnell's final alleged error concerns his counsel's failure to raise four objections during trial. All but one of these objections would have been meritless, so counsel's failure to raise these objections does not meet the deficiency prong; and Counsel's failure to raise the remaining objection does not meet the prejudice prong.

### A. Double Jeopardy

Parnell's convictions for two conspiracies and his convictions for both conspiracy and attempt did not violate double jeopardy. His counsel was therefore not ineffective for failing to raise double jeopardy challenges to these convictions.

Parnell was appropriately convicted of two separate conspiracy charges. When a defendant is convicted of conspiracy under two different statutes, these convictions do not violate double jeopardy if each conspiracy requires proof of an element that the other conspiracy does not. *Albernaz v. United States*, 450 U.S. 333, 337 (1981) (applying this elements test when defendants had one agreement to violate two distinct statutes). Parnell's convictions meet this elements test first announced in *Blockburger v. United States*, 284 U.S. 299 (1932). His conspiracy convictions were for conspiracy to commit robbery under the Hobbs Act and conspiracy to sell drugs under the Controlled Substances Act. The Hobbs Act conspiracy required an agreement to commit robbery, which was not required by the Controlled Substances Act conspiracy. The Controlled Substances Act conspiracy required an agreement to possess or sell drugs, which was not required for the Hobbs Act conspiracy. Because each conspiracy required proof of a unique element, Parnell's multiple convictions did not violate double jeopardy. *Albernaz*, 450 U.S. at 337.

Parnell incorrectly argues the *Blockburger* elements test is inappropriate here because he entered into one agreement with two objectives. He claims *Blockburger* does not apply whenever

a defendant is charged with two conspiracies based on one agreement. This is not the law. *Blockburger* does not apply when a defendant is charged *under one statute* with two conspiracies based on one agreement. *United States v. Rigas,* 605 F.3d 194, 204 (3d Cir. 2010) ("The *Blockburger* test is . . . inapplicable where a single statutory provision was violated."). However, "the *Blockburger* test applies where the defendant's conduct violated multiple conspiracy statutes." *Id.*; *see also Albernaz*, 450 U.S. at 337 (applying the *Blockburger* test when defendants entered into one agreement with a dual purpose and violated two distinct statutes). The *Blockburger* test applies here because Parnell has violated two distinct statutes: 18 U.S.C. § 1951 (conspiracy under the Hobbs Act) and 21 U.S.C. § 846 (conspiracy under the Controlled Substances Act). Parnell's conspiracy convictions therefore do not violate double jeopardy because they each have a distinct element, and Parnell's counsel was not deficient for failing to raise this meritless double jeopardy argument.

Parnell's counsel was also not deficient for failing to raise a double jeopardy challenge to his convictions for both attempt and conspiracy. The Supreme Court has long held that a defendant may be charged with both conspiracy and the underlying crime. *See United States v. Felix*, 503 U.S. 378, 389 (1992) ("[A] substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." (citing *United States v. Bayer*, 331 U.S. 532, 542 (1947))). This holding applies with equal force when the defendant is charged with attempting to commit the underlying crime and then charged with conspiracy. *Id.* at 380 (explaining that the defendant was convicted both for attempt to sell drugs and conspiracy to sell drugs, and these convictions did not violate double jeopardy). Like the defendant in *Felix*, Parnell was appropriately charged with conspiracy and attempt to commit the same underlying offenses.

a defendant is charged with two conspiracies based on one agreement. This is not the law. *Blockburger* does not apply when a defendant is charged *under one statute* with two conspiracies based on one agreement. *United States v. Rigas,* 605 F.3d 194, 204 (3d Cir. 2010) ("The *Blockburger* test is . . . inapplicable where a single statutory provision was violated."). However, "the *Blockburger* test applies where the defendant's conduct violated multiple conspiracy statutes." *Id.*; *see also Albernaz*, 450 U.S. at 337 (applying the *Blockburger* test when defendants entered into one agreement with a dual purpose and violated two distinct statutes). The *Blockburger* test applies here because Parnell has violated two distinct statutes: 18 U.S.C. § 1951 (conspiracy under the Hobbs Act) and 21 U.S.C. § 846 (conspiracy under the Controlled Substances Act). Parnell's conspiracy convictions therefore do not violate double jeopardy because they each have a distinct element, and Parnell's counsel was not deficient for failing to raise this meritless double jeopardy argument.

Parnell's counsel was also not deficient for failing to raise a double jeopardy challenge to his convictions for both attempt and conspiracy. The Supreme Court has long held that a defendant may be charged with both conspiracy and the underlying crime. *See United States v. Felix*, 503 U.S. 378, 389 (1992) ("[A] substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." (citing *United States v. Bayer*, 331 U.S. 532, 542 (1947))). This holding applies with equal force when the defendant is charged with attempting to commit the underlying crime and then charged with conspiracy. *Id.* at 380 (explaining that the defendant was convicted both for attempt to sell drugs and conspiracy to sell drugs, and these convictions did not violate double jeopardy). Like the defendant in *Felix*, Parnell was appropriately charged with conspiracy and attempt to commit the same underlying offenses.

Parnell nonetheless argues that his conspiracy and attempt charges were impermissible because the statutes he was convicted under each punish a person who "attempts or conspires" to violate the statute. 21 U.S.C. § 846; 18 U.S.C. § 1951. He encourages the Court to interpret these statutes as providing two alternative means to commit the same crime because they use the word "or." *See Rigas*, 605 F.3d at 208 (noting that a statute's use of the phrase "'either ... or' suggests that Congress enacted [that statute] intending to create a single, criminal offense that may be committed in two alternative ways.").

While the word "or" in criminal statutes sometimes indicates that Congress intended to punish alternative means of committing the same crime, "or" does not have that meaning here. As explained in *Felix*, conspiracy has long been considered a distinct crime which stems from the defendants' agreement to break the law. *See Felix*, 503 U.S. at 389–90 ("[T]he 'essence' of a conspiracy offense 'is in the agreement or confederation to commit a crime.'" (quoting *Bayer*, 331 U.S. at 542)). Indeed, the *Felix* case addressed one of the very statutes at issue here, 21 U.S.C. § 846,[4] and the Supreme Court concluded this statute created two distinct crimes of attempt and conspiracy. *Id.*; *see also United States v. Starks*, 515 F.2d 112, 117 n.5 (3d Cir. 1975) (noting in a Hobbs Act robbery case that, "[t]he offenses of conspiracy and attempt . . . could have been included in separate counts of the same indictment"). In light of the longstanding principle that conspiracy and attempt are distinct crimes, the statutes at issue here should not be interpreted to say otherwise. Therefore, Parnell cannot challenge his convictions for both attempt and conspiracy, and his counsel was not deficient when he failed to raise this challenge.

### B. Discovery on Selective Enforcement

---

[4] Although the Supreme Court does not explicitly identify the statute at issue in *Felix*, the lower court opinion explains that the defendant was convicted under 21 U.S.C. § 846. *See United States v. Felix*, 926 F.2d 1522, 1524 (10th Cir. 1991).

Parnell was not prejudiced by his counsel's late request for discovery on his selective enforcement claim. Parnell's counsel requested discovery on this claim after trial. Assuming this delay was error, it did not prejudice Parnell. While the Court concluded Parnell had waived discovery on his selective enforcement claim, the Court also denied discovery because Parnell failed to meet the threshold showing of discriminatory effect and discriminatory intent. *See generally* Mem. Op., June 27, 2014, ECF. No. 377. Therefore, even if Parnell's request for discovery had been raised at the appropriate time, it would have been denied, and Parnell was not prejudiced by his counsel's delay.

Parnell nonetheless argues he was entitled to discovery under the more liberal discovery standard announced by the Third Circuit in *United States v. Washington*, 869 F.3d 193 (3d Cir. 2017). In *Washington*, the Third Circuit held that a defendant seeking discovery on a selective enforcement claim did not have to meet the same high burden as a defendant seeking discovery on a selective prosecution claim. *Id.* at 220. The *Washington* decision, however, does not entitle Parnell to relief because it is not retroactively applicable to his case. A rule of criminal procedure does not apply retroactively when (a) a defendant's conviction was final before the rule was announced; (b) the rule was new rather than compelled by existing precedent; and (c) the rule does not fall under one of the two exceptions to nonretroactivity recognized by the Supreme Court. *See Beard v. Banks*, 542 U.S. 406, 411 (2004) (explaining the three-step process for evaluating whether a rule applies retroactively).

All three of these factors are met here. First, *Washington* was decided almost a year after Parnell's conviction became final in October 2016. *See Reinhold v. Rozum*, 604 F.3d 149, 154 (3d Cir. 2010) ("[A] conviction becomes final for *Teague* [retroactivity] purposes 'on the date the Supreme Court denies certiorari.'" (internal citations omitted)). Second, *Washington*'s new

9

discovery standard for selective enforcement claims was not compelled by existing precedent. As recognized in *Washington*, the Third Circuit "ha[d] not previously addressed" this issue, and other courts of appeals use the more rigorous discovery standard articulated in *United States v. Armstrong*, 517 U.S. 456 (1996). *Washington*, 869 F.3d at 216; *see also United States v. Whitfield*, 649 F. App'x 192, 196 n.11 (3d Cir. 2016) (affirming this Court's order on selective enforcement discovery in this case and noting that this Court "did not abuse its discretion in applying the *Armstrong* standard to deny defendants' discovery request"). Therefore, the discovery standard announced in *Washington* is a new rule that was not compelled by the existing legal landscape.

Third, this case is not covered by the two exceptions to nonretroactivity. Under these exceptions, a new rule is retroactively applied: "(1) if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,' or (2) if it requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.'" *Teague v. Lane*, 489 U.S. 288, 290 (1989) (internal citations omitted) (alteration in original). The first exception is irrelevant here, and the second exception is limited to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard*, 542 U.S. at 417. In fact, the second exception is so narrow, the Supreme Court "ha[s] yet to find a new rule that falls under the second *Teague* [nonretroactivity] exception." *Id*. The new discovery standard announced in *Washington* does not fall under this narrow second exception. The rule deals with discovery on a claim unrelated to guilt or innocence. It is therefore not a watershed rule implicating fundamental fairness, and it does not apply retroactively. *See id.*

Because *Washington*'s discovery standard does not apply retroactively to this case, Parnell's counsel's alleged error would not have changed the outcome of Parnell's motion for discovery. Parnell was therefore not prejudiced by his counsel's error.

### C. Trial Testimony and Closing Arguments

Parnell's counsel was not ineffective for failing to object to four alleged errors during trial. These alleged errors were: (1) the ATF agent provided improper overview testimony; (2) the ATF agent gave impermissible opinion testimony; (3) Detective Marano, the government's expert, improperly opined on Parnell's state of mind; and (4) two of the prosecutor's statements during closing amounted to prosecutorial misconduct. The first three issues Parnell identifies were not errors, so his counsel was not ineffective when he failed to object to them. Regarding Parnell's final issue, one of the prosecutor's two statements was not misconduct and the other statement did not prejudice Parnell. The Court will address each of Parnell's alleged errors in turn.

First, the ATF agent's testimony was not improper overview testimony. The Third Circuit has held that "the government may call as its first witness an officer who is familiar with, or was personally involved in, the criminal investigation, and that officer may testify about all matters within his personal knowledge from the investigation." *United States v. Lacerda*, 958 F.3d 196, 211 (3d Cir. 2020). However, the officer may not "opine[] on ultimate issues of guilt, make[] assertions of fact outside of [his] personal knowledge, or delve[] into aspects of the investigation in which he did not participate." *Id.* at 208. Here, the ATF agent testified regarding his personal involvement in the investigation when he was undercover. Indeed, the very testimony Parnell claims was inadmissible overview concerned conversations the ATF agent personally participated in with Whitfield. *See* Def.'s Br. in Supp. of Mot. to Vacate 19–20, ECF No. 589 (citing Trial Tr. Vol. 2 at 118, 137 (ATF agent explaining statements he made to Whitfield)). Parnell also objects to the ATF agent identifying each Defendant during his testimony. But this was again based on the agent's personal experience because the agent interacted with each Defendant on the day of the fake robbery. Because the ATF agent's testimony concerned his personal involvement in the

11

investigation, it was admissible. *See Lacerda*, 958 F.3d at 210 (finding an agent's overview testimony was admissible when it concerned "his personal observations, and his beliefs of what the evidence showed based on what he saw and heard and did"). Parnell's counsel was therefore not deficient for failing to object to this admissible testimony.

Second, Parnell's counsel was not ineffective for failing to object to the ATF agent's alleged opinion testimony. Federal Rule of Evidence 701 allows lay witnesses to give opinion testimony. However, this rule prevents a lay witness from sharing opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [the rule regarding expert opinions]." Fed. R. Evid. 701(c). The Third Circuit has explained this restriction does not limit opinion testimony based on personal experience: "When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). In addition, because Rule 701 only applies to opinion testimony, it is not applicable when witnesses testify regarding facts such as "those things they ha[ve] seen, heard, felt, smelled, tasted, or done." *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1195 (3d Cir. 1995) (internal citations and quotation marks omitted); *see also United States v. Anderskow*, 88 F.3d 245, 249 (3d Cir. 1996) (finding that testimony containing facts rather than opinions "did not implicate Rule 701").

Most of the testimony Parnell identifies as impermissible under Rule 701 does not contain an opinion and therefore is not covered by this rule. For example, Parnell objected to the ATF agent's description of his training to be an undercover agent and his explanation of the duties he performed as an undercover agent. Def.'s Br. in Supp. of Mot. to Vacate 15–16, ECF No. 589

(citing Trial Tr. Vol. 2 at 54-58). This testimony concerned facts about the agent's personal experiences in his nine years as a federal agent, not opinions. Parnell also objects to the agent's testimony concerning the steps the agent took to ensure the accuracy of transcripts and recordings of conversations the agent participated in. Def.'s Br. in Supp. of Mot. to Vacate 17, ECF No. 589 (citing Trial Tr. Vol. 2 at 81-82). This testimony was also limited to facts concerning actions the agent took such as comparing transcripts to video recordings and making sure the equipment he used to produce the recordings had not malfunctioned. Because the agent did not express an opinion, his testimony was admissible, and Parnell's counsel was not deficient for failing to object to this testimony.

The one statement Parnell identifies that could constitute an opinion did not violate Rule 701, and, even if it had, it was not prejudicial to Parnell. Parnell objects to the agent's testimony that he "asked Whitfield, how much cocaine went for here -- a brick of cocaine and he [Whitfield] correctly stated, approximately, forty thousand." Trial Tr. Vol. 2 at 147. This testimony did not violate Rule 701 because the agent testified as to what Whitfield said, not the objective value of a kilogram of cocaine. Even if this testimony was interpreted as opining on the value of the drugs, it was not prejudicial to Parnell because the government introduced expert testimony that the value of one kilogram of cocaine was between thirty and forty thousand dollars. Trial Tr. Vol. 6 at 258. The jury therefore did not have to rely on the agent's lay opinion testimony to learn the value of the drugs. Because the agent's testimony about the value of the drugs was not prejudicial and did not violate Rule 701 Parnell's counsel was not ineffective for failing to object to it.

Third, Parnell's counsel was not deficient for failing to object to Detective Marano's expert testimony because Detective Marano did not testify about the Defendants' mental state and because the Court explicitly considered this issue before Parnell's counsel could raise an objection.

13

Federal Rule of Evidence 704 prevents an expert in a criminal case from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Fed. R. Evid. 704(b). This rule does not prevent an expert from giving testimony that "supports a conclusion that the defendant had the necessary state of mind" as long as the expert does not "draw the ultimate conclusion for the jury." *United States v. Davis*, 726 F.3d 434, 446 (3d Cir. 2013). In drug cases, "[i]t is well established that experts may describe, in general and factual terms, the common practices of drug dealers. . . [including] the quantity, purity, usual dosage units, and street value of narcotics" without running afoul of Rule 704. *United States v. Watson*, 260 F.3d 301, 308-09 (3d Cir. 2001) *see also Davis*, 726 F.3d at 446 (affirming a district court's ruling admitting testimony from a drug expert when the expert "spoke about common practices").

Detective Marano's testimony was admissible under Rule 704 because it concerned general propositions about the drug trade rather than specific statements about Defendants' mental states. Detective Marano testified that, in order to make money off the fictional cocaine, a person stealing the cocaine would have to be able to sell it. He explained "[h]aving drugs, in and of itself, there's no money. I could have five kilos, that doesn't make me rich, unless I can get rid of it and know the market value and I know where I can cut corners and give people a break . . . . There is no point to stealing it, unless you can get money for it." Trial Tr. Vol 6 at 253-54. He also testified that ten kilograms of cocaine was too much for personal use. He stated that such a large amount of cocaine would be "for delivery [not personal use], anything else it's preposterous . . . . It's just so much [cocaine] . . . . You would, literally, kill yourself, with a half of that, a quarter of that." *Id.* at 262. Both of Detective Marano's statements are general facts about the drug trade: stealing cocaine is profitable only if you can sell it and ten kilograms of cocaine is too much for personal use. While

14

these facts support the conclusion that a person stealing ten kilograms of cocaine intends to sell it, they do not "draw the ultimate conclusion for the jury." *Davis*, 726 F.3d at 446. Therefore, these general facts were admissible evidence and Parnell's counsel was not deficient in failing to object to Detective Marano's testimony.[5]

Parnell's counsel was also not deficient because his decision not to object was reasonable considering this issue had been explicitly raised by his co-counsel and addressed by the Court. Before Detective Marano testified regarding the need to sell the cocaine, Whitfield's counsel objected to this line of questioning. During a discussion at side bar, the Court specifically cautioned that Detective Marano could not "testify as to th[e] defendant's state of mind." Trial Tr. Vol. 6 at 249-50. The Court further clarified that Detective Marano "cannot jump in to the defendant's mind and . . . testify as to what is his opinion about whether this is a drug deal or not, et cetera." *Id.* at 250. Because the Court had already addressed this issue, Parnell's counsel did not need to make an additional objection. Counsel's decision not to object was therefore reasonable and not deficient. *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (noting that, when evaluating an ineffective assistance of counsel claim "it is critical that courts be 'highly deferential' to counsel's reasonable strategic decisions").

Finally, Parnell's counsel was not ineffective for failing to object to two statements the government made during its rebuttal closing argument. The Third Circuit "ha[s] repeatedly held that a 'prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence.'" *United States v. Lee*, 612 F.3d 170,

---

[5] Even if this testimony had been improper, Parnell cannot show he was prejudiced because Detective Marano's testimony was in response to questions concerning Whitfield, not Parnell. If Detective Marano was discussing any defendant's state of mind, it was Whitfield's state of mind, and Parnell does not give any reason that the jury would have associated Detective Marano's testimony with him instead of Whitfield.

194 (3d Cir. 2010) (internal citations omitted); *see also United States v. Fulton*, 837 F.3d 281, 311 n.228 (3d Cir. 2016) ("The government 'may ask the jury to draw permissible inferences from anything that appears in the record.'" (internal citations omitted)). In addition, during a rebuttal closing, the government may respond to arguments raised in the defense's closing. *See United States v. Brown*, 765 F.3d 278, 296 (3d Cir. 2014) ("Rebuttal summation provides the Government an opportunity to respond to [defense counsel's] arguments."); *see also Werts v. Vaughn*, 228 F.3d 178, 199-200 (3d Cir. 2000) (describing the invited response doctrine, which excuses improper comments by the prosecution when those comments are necessary to respond to improper arguments made by defense counsel). When evaluating whether a prosecutor's statements are prejudicial enough to violate due process, a court should "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *United States v. Repak*, 852 F.3d 230, 259 (3d Cir. 2017) (internal citations and quotation marks omitted).

The first statement at issue in this case did not amount to prosecutorial misconduct. In order to rebut Parnell's argument that he did not have any connection to his co-defendants, the government stated, "Mr. Parnell would like you to believe that he had no relationship with anybody but [codefendant Kareem] Long. But he lied to you about that, he had [codefendant Lafayette] Rawls's number in his phone[.]" Trial Tr. Vol. 8 at 26-27. This statement was a direct response to Parnell's closing, in which his counsel stated, "my client had no relationship with any other defendant, other than Kareem Long." Trial Tr. Vol. 7 at 353; *see also id.* at 129 (Parnell testifying that he "didn't know" his codefendants at the time of the robbery). The government was entitled to respond to this argument by pointing out that Parnell had some connection with Lafayette Rawls. This statement was based on evidence in the record because Parnell testified he had Rawls's

16

number in his phone. Trial Tr. Vol. 7 at 149-50. Despite Parnell's arguments to the contrary, it was also permissible for the government to challenge Parnell's credibility by stating that he "lied" about his connections to other defendants. *See United States v. Reilly*, 33 F.3d 1396, 1421 (3d Cir. 1994) ("While it is true that the prosecutor referred to [the Defendants'] testimony as 'lies,' in making this characterization he was not guilty of misconduct because he merely was making a 'fair comment on the evidence adduced at trial.'" (internal citations omitted)). The government's statement about Parnell's relationship with Rawls was appropriate because it used evidence in the record to respond to Parnell's closing argument. Because this statement did not amount to misconduct, Parnell's counsel was not deficient for failing to object to it.

Assuming the second statement Parnell identified amounted to prosecutorial misconduct, Parnell cannot show he was prejudiced by his counsel's failure to object to this statement. In this second statement, the government questioned Parnell's narrative that he was trying to leave the junkyard when he was arrested. The government argued Parnell was likely going back to the car in order to pull it further into the junkyard. The government stated, "[Parnell] would have you believe that he was in the process of getting ready to leave, but you heard testimony from Agent Edwards that he had just asked, can I park my car here, can I move it up? And so, the -- the plan there was to move the cars further into the junkyard, not to drive off, because they [Parnell and codefendant Kareem Long] were so uncomfortable." Trial Tr. Vol. 8 at 26. In this statement, the government implied that Parnell asked whether he could park the car in the junkyard when the testimony showed it was his codefendant Kareem Long who asked about parking the car. Trial Tr. Vol. 3 at 257, 261, 263-67.

Although the government may have inaccurately attributed Long's question to Parnell, this mistake was not prejudicial for two reasons. First, earlier in the government's rebuttal and initial

17

closing, it correctly identified Long as the person who asked to park the car in the junkyard. *Id.* at 16-17; Trial Tr. Vol 7 at 248. Because the jury heard the correct information from the government twice, including a few minutes before the government's misstatement, the jury likely understood that Long, not Parnell, had asked about parking the car. Second, the government's point about leaving the car in the junkyard was valid regardless of whether Long or Parnell asked to park the car because both Long and Parnell came in the same car. In fact, Parnell had been driving the car. It would have therefore been natural for him to park the car after Long asked the ATF agent if they could leave the car in the junkyard. It was thus irrelevant to the government's argument that Long, not Parnell, asked about parking the car. Because the government's misstatement was both minimally relevant, and corrected by other accurate statements, it did not prejudice Parnell. *See Repak*, 852 F.3d at 259 (explaining the importance of examining a prosecutor's statements in context).

In sum, Parnell's counsel was not ineffective for failing to object to Parnell's four alleged trial errors and he is not entitled to relief on that ground.

## II. <u>Carrying a Firearm During a Drug Crime or Crime of Violence</u>

Parnell is not entitled to relief from his conviction for carrying a firearm during a drug crime or crime of violence under 18 U.S.C. § 924(c). This statute prohibits a defendant from carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). In other words, a defendant may be convicted under this statute if he uses a gun in connection with either a drug crime or a violent crime. The statute specifies that a drug trafficking crime includes "any felony punishable under the Controlled Substances Act." *Id.* § 924(c)(2). In a separate provision, the statute sets out a two-part definition of crime of violence. *Id.* § 924(c)(3). In *United States v. Davis*, the Supreme Court struck down one of the two parts of

the crime of violence definition as unconstitutionally vague. 139 S. Ct. 2319, 2336 (2019) ("[Section] 924(c)(3)(B) [the residual clause of the definition of crime of violence] is unconstitutionally vague."). The Supreme Court's holding in *Davis* had no effect on the validity of the definition of drug trafficking crime. Defendants who were convicted of carrying a firearm during a drug trafficking crime therefore cannot have their convictions re-examined under the *Davis* line of cases. *See United States v. Parnell*, 652 F. App'x 117, 122 (3d Cir. 2016) ("*Johnson* [a precursor to *Davis*] does not call into question the statute's unambiguous definition of 'drug trafficking crime.'").

Here, because the jury unanimously found Parnell carried a firearm during a drug trafficking crime, his conviction is not implicated by *Davis*. Parnell was convicted of conspiring and attempting to sell drugs in violation of 21 U.S.C. § 846. That statute is part of the Controlled Substances Act, so Parnell's crimes qualify as drug trafficking crimes under § 924(c). In response to special interrogatories in the jury verdict form, the jury found Parnell had carried a firearm while committing these crimes. *See* Jury Verdict Form 13, ECF No. 245. Because Parnell was convicted of carrying a firearm in relation to drug trafficking crimes, he is not entitled to relief under *Davis*.

Parnell nonetheless argues he is entitled to relief because his 924(c) conviction was also based on the crimes of conspiring and attempting to commit Hobbs Act Robbery. This argument is meritless because Parnell's drug trafficking crimes provide an independent basis for his conviction. The Third Circuit addressed this issue when deciding Parnell's direct appeal and found his conviction would remain valid even if conspiracy and attempt to commit Hobbs Act Robbery were no longer crimes of violence under § 924(c). *Parnell*, 652 F. App'x at 122. The Third Circuit's reasoning on Parnell's direct appeal forecloses Parnell's argument here. *See United States*

19

*v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (a defendant may not use a motion under 28 U.S.C. § 2255 to relitigate an issue already decided on direct appeal).

## CONCLUSION

The record demonstrates that Parnell's counsel was not ineffective, and Parnell's conviction for carrying a firearm during a drug trafficking crime is not affected by the Supreme Court's decision regarding crimes of violence. The Court will thus deny Parnell's motion to vacate, set aside, or correct his sentence without a hearing. *See* 28 U.S.C. § 2255(b) (a hearing is not required when "[the] records of the case conclusively show that the prisoner is entitled to no relief"). Because reasonable jurists could not disagree about whether Parnell is entitled to relief, the Court will not issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 ("Where a district court has rejected the constitutional claims on the merits, the showing required [for a certificate of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.